In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-23-00362-CV

**ROGELIO ESTRADA RODRIGUEZ, Appellant**

**V.**

**GABRIELLA NICOLE MCDOW, Appellee**

**On Appeal from the Probate Court No. 1
Montgomery County, Texas
Trial Cause No. 23-33141**

**MEMORANDUM OPINION**

Appellee Gabriella Nicole McDow ("Appellee" or "Gabriella") filed a Petition for Bill of Review from a probate case, challenging the prior Judgment Declaring Heirship because she did not receive notice of the probate proceedings, and she sought a declaration that she was an heir of decedent Maria Montalvo Rodriguez ("Maria"). After a hearing, the trial court signed a Final Order granting the Bill of Review finding for Gabriella. Appellant Rogelio Estrada Rodriguez

1

("Appellant" or "Rogelio") timely filed a notice of appeal. We affirm in part and reverse and remand in part.

## Background

Maria Montalvo Rodriguez died intestate on December 29, 2020. The trial court signed a Judgment of Heirship on February 3, 2022, which showed the following:

| Heir | Share of Decedent's Community Property | Share of Decedent's Separate Real Property | Share of Decedent's Separate Personal Property |
|---|---|---|---|
| Rogelio Estrada Rodriguez Spouse | 100% | life estate in 1/3 | 1/3 |
| Alejandro Rodriguez Child | 0 | 1/2 subject to life estate | 1/3 |
| Ana Maria McDow Child | 0 | 1/2 subject to life estate | 1/3 |

Gabriella filed a Petition for Bill of Review in the County Court at Law No. 2 for Montgomery County, Texas on March 30, 2023, and a First Amended Verified Petition on September 15, 2023. Gabriella's Amended Petition, the live pleading at the time of trial, stated that she was filing her bill of review under section 55.251 of the Texas Estates Code,[1] and she asked that the Judgment Declaring Heirship signed by the trial court on February 3, 2022, be set aside.

---

[1] Section 55.251 of the Texas Estates Code provides a statutory bill of review: (a) An interested person may, by a bill of review filed in the court in which the probate proceedings were held, have an order or judgment rendered by the court revised and corrected on a showing of error in the order or judgment, as applicable.

According to the Petition, Maria had two children: (1) Alejandro Rodriguez ("Alejandro"), whom Maria had with her husband Rogelio, and (2) Ana Maria McDow ("Ana"), who was born prior to and outside of Maria's and Rogelio's marriage and whom Rogelio did not adopt. The Petition alleges that both Alejandro and Ana executed valid disclaimers of their interest in Maria's estate. The Petition further alleges that, at the time of her death, Maria had four grandchildren: Austin, Brandon, Lucas, and Gabriella. Gabriella alleges that Austin, Brandon, and Lucas also executed disclaimers of their interest in Maria's estate.

Gabriella alleged she was a minor when Maria died, Gabriella did not execute a waiver or disclaimer, and Gabriella was a living heir of Maria. She also alleged she was entitled to receive notice of the probate proceedings, she did not receive notice, and she did not execute a waiver of notice. Gabriella alleged in her Petition that substantial error exists in the Judgment Declaring Heirship because it declares that Rogelio is entitled to 100% of the community property, whereas under section 201.003(c) of the Texas Estates Code,[2] Gabriella was entitled to take 100% of

---

(b) A bill of review to revise and correct an order or judgment may not be filed more than two years after the date of the order or judgment, as applicable.

Tex. Est. Code Ann. § 55.251 ("Revision and Correction of Order of Judgment in Probate Proceeding."). The parties do not dispute whether Gabriella's Petition was timely filed.

[2] Section 201.003(c) of the Texas Estates Code provides, in relevant part, "If the deceased spouse is survived by a child or other descendant who is not also a child or other descendant of the surviving spouse, the deceased spouse's undivided one-

3

Maria's share of any community property. Gabriella stated that she has a meritorious claim and that she was prevented from asserting her claim through no fault or negligence on her part. Therefore, she asked that the Judgment Declaring Heirship be set aside and corrected.

Evidence and Arguments at the Bill of Review Proceeding

At the Bill of Review trial, Gabriella argued that she was a known heir at the time of the proceedings to declare heirship, and her whereabouts were known to Rogelio, who was the administrator of Maria's estate. She further argued that under section 202.051 of the Texas Estates Code, all heirs aged twelve or older whose whereabouts are known must receive notice of the proceedings.[3] She further argued that the attorney ad litem had filed a report wherein he "flagged the issue that Ana and Alejandro's disclaimers might mean [] that the grandchildren became heirs" under section 240.051 of the Texas Property Code because, having disclaimed their own interest, their interest passed to their surviving descendants. At the time of the heirship proceedings, Alejandro did not have children, and Ana had four children: Austin, Lucas, Brandon, and Gabriella. According to Gabriella, there was untrue

half interest in the community estate passes to the deceased spouse's children or other descendants." Tex. Est. Code Ann. § 201.003(c).

[3] Section 202.051(1) of the Texas Estates Code states, "citation in a proceeding to declare heirship must be served by a qualified delivery method on [] each distributee who is 12 years of age or older and whose name and address are known or can be ascertained through the exercise of reasonable diligence[.]" Tex. Est. Code Ann. § 202.051(1).

testimony at the heirship proceedings that Ana and Alejandro both are Rogelio's children, but Ana was not Rogelio's biological nor adopted child. She further argued that under section 201.003 of the Texas Estates Code, 100% of Maria's share of community property should go to her children or other descendants, and although three of Ana's children (Austin, Lucas, and Brandon) filed disclaimers of their interest, Gabriella did not.

Rogelio argued that the Judgment Declaring Heirship was correct because it accurately named Maria's two children, Alejandro and Ana, and correctly identified their interests.

Gabriella testified that she was born on December 18, 2004, Ana is her mother, Maria was her grandmother, and Rogelio is her "step-grandfather." She recalled that she was sixteen years old when Maria died. She testified that she did not receive notice of the probate proceeding and that she had not signed a waiver of notice or citation. According to Gabriella, she was not contacted by Rogelio's attorney nor by the attorney ad litem, she did not sign a disclaimer of her interest in Maria's estate, and she did not participate in the prior probate proceeding. Gabriella recalled that, when Maria died, Gabriella was living with her mother (Ana), and that Rogelio knew that she was living with Ana.

Ana testified that Maria was her mother, and she identified Exhibit PX-6 as her birth certificate. The birth certificate does not include her father's name, but Ana

testified that she learned from her mother and other relatives that her father was Francisco Pinto. Ana recalled that she did not have contact with Francisco when she was growing up, and she and her mother lived with her mother's employers—a family for whom Maria worked as a housekeeper. Ana testified that Rogelio is her step-father, Alejandro is her half-brother, and Rogelio did not adopt her. Ana understood that Maria died without a will and that Rogelio was the administrator for Maria's estate. She recalled that the attorney ad litem contacted her during the pendency of the probate, and she signed a waiver of notice for those proceedings. Ana testified that she participated in the prior hearing in the probate proceedings, she identified the Disclaimer she signed in October of 2021 disclaiming any interest in Maria's estate, and she testified that Rogelio asked her to sign it. According to Ana, she did not know what interest she had in Maria's estate.

Ana testified that she has four children—Austin, Lucas, Brandon, and Gabriella—all of whom lived with her at the time of the prior proceeding except for Austin. According to Ana, Rogelio knew where she lived, and he knew that Gabriella lived with her at the time. Ana recalled she attended the prior hearing along with Rogelio, Alejandro, and the attorney ad litem, but her children did not attend. Ana explained that after the hearing, she learned from a friend that Gabriella may have been left out of the distribution of the estate.

6

On cross-examination, Ana testified that the attorney ad litem had asked her about her children, but she did not recall whether the judge had. Ana believed that the attorney ad litem knew she had children although she had not told him so. Ana "vaguely" remembered saying that she wanted her mother's property to go to Rogelio.

The trial court took judicial notice of the file for the underlying probate proceedings, and a transcript of the prior hearing was admitted into evidence. The transcript reflects that Ana testified that it was her desire for her mother's property to go to her "father," which is why she signed the Disclaimer. On redirect, Ana testified that when she was questioned at the previous hearing and asked about her "father," she did not correct the questioner because she knew that they were referring to Rogelio, her step-father, and she "didn't know to correct" the question. According to Ana, she was never directly asked whether Rogelio was her biological or adopted father.

The transcript from the previous hearing reflects that Rogelio testified that there were two children born of his marriage to Maria—Ana and Alejandro:

[Rogelio's counsel]: And you and Mrs. Rodriguez, this was your only marriage?

[Rogelio]: Yes.

[Rogelio's counsel]: And you were married for how long?

[Rogelio]: Over 37 years.

[Rogelio's counsel]: Thirty seven years, okay. And of this marriage, there were two children born, correct?

[Rogelio]: Correct.

[Rogelio's counsel]: What are their names?

[Rogelio]: Ana Montalvo and Alejandro Rodriguez.

The transcript in the underlying probate also reflects that Claudia Montalvo[4] testified that Alejandro and Ana were the biological children of Maria and Rogelio. Claudia also testified that Alejandro's sister had four children. Alvaro Montalvo also testified that he was Maria's brother, that Maria and Rogelio had two children—Ana and Alejandro—and that Ana had four children. Ana testified that she had four children: Austin, Lucas, Brandon, and Gabriella and agreed that "as far as [she] kn[e]w," the children wanted Rogelio to inherit whatever Maria had. She also testified that the younger two children, Brandon and Gabriella, were younger than eighteen, and Ana consented on their behalf to Rogelio acting as administrator of Maria's estate. The trial court asked Rogelio's attorney to get waivers from "the two adult children[.]" Also admitted into evidence was Petitioner's First Request for Admissions served on Rogelio, in which Rogelio admitted that Gabriella is Maria's granddaughter.

---

[4] Claudia did not testify about her relationship to the parties.

The Trial Court's Ruling in the Bill of Review Proceeding

After hearing testimony and receiving evidence, the trial court announced from the bench that it was ruling in favor of the plaintiff, Gabriella. On October 16, 2023, the trial court signed an order stating, in relevant part,

> After receiving evidence and hearing argument the Court finds for the Plaintiff. It is therefore ordered that the Judgement Declaring Heirship rendered in cause number 21-41018-P previously filed in County Court at Law #2 is/are set aside and the probate matter is reinstated on this Court's active docket. This judgment is (1) final, (2) a disposition of all claims and parties, and (3) appealable.

Rogelio requested Findings of Fact and Conclusions of Law. The trial court issued Findings of Fact and Conclusions of Law, which state, in relevant part:

> FINDINGS
> . . . .
> 4. Ana Maria McDow and Alejandro Rodriguez filed disclaimers in the heirship proceeding.
> 5. Gabriella McDow, daughter of Ana Maria McDow and granddaughter of the decedent filed this bill of review complaining:
> > a. She was not served and should have been served as the disclaimer of Ana Maria McDow caused her to be an heir of the decedent.
> > b. The judgment rendered is incorrect.
> 6. Gabriella McDow was not served in the heirship case.
> 7. Rogelio Estrada Rodriguez and/or the witnesses were questioned by this court as to whether Rogelio Estrada Rodriguez was the *biological* parent of Alejandro Rodriguez and Ana Maria McDow during the heirship proceeding to which there was an affirmative response.
> > a. This information was not true.

CONCLUSIONS OF LAW

1. The bill of review was timely filed and the Court has jurisdiction over the bill of review as judgement in the underlying case was had in this Court.
2. The disclaimer(s) do not change the identities of the intestate heirs of the decedent.
3. Ana McDow is not an heir of the decedent, and was not entitled to service in the heirship proceeding.
4. The Court had jurisdiction over the heirship and all required notices and service were completed.
5. The judgment of heirship contains an error regarding the percentages of the estate attributable to the heirs.
   a. The untruthful response(s) that the decedent's spouse was the biological parent of the decedent's children resulted in Rogelio Estrada Rodriguez' assignment of 100% of the decedent's community property as opposed to 0% which would have been the case had a truthful answer been given to this Court's question.

Rogelio timely filed a Notice of Appeal.

## Issues

On appeal, Rogelio argues that the trial court erred by granting the bill of review and setting aside the Judgment Declaring Heirship for two reasons: (1) the Judgment Declaring Heirship correctly identified Maria's heirs, and (2) Gabriella was not entitled to notice of the heirship proceeding. In a third issue, Rogelio argues that the trial court erred by concluding as a matter of law that Ana was not Maria's heir.

## Standard of Review

"A bill of review is brought as a direct attack on a judgment that is no longer appealable or subject to a motion for new trial." *Frost Nat'l Bank v. Fernandez*, 315

10

S.W.3d 494, 504 (Tex. 2010); *see also Valdez v. Hollenbeck*, 465 S.W.3d 217, 226 (Tex. 2015). "The purpose of a direct attack is to change the former judgment and secure the entry of a correct judgment in lieu of the earlier incorrect one." *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973).

Section 55.251 of the Texas Estates Code provides for a statutory bill of review whereby "[a]n interested person may, by a bill of review filed in the court in which the probate proceedings were held, have an order or judgment rendered by the court revised and corrected on a showing of error in the order or judgment," provided the bill of review is filed not more than two years after the date of the order or judgment. *See* Tex. Est. Code Ann. § 55.251; *Valdez*, 465 S.W.3d at 226-27. The interested party filing a bill of review is required to prove that the trial court committed substantial error. *See Ablon v. Campbell*, 457 S.W.3d 604, 609 (Tex. App.—Dallas 2015, pet. denied); *Buck v. Estate of Buck*, 291 S.W.3d 46, 53 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.). The movant must prove the error by a preponderance of the evidence, and the error need not appear on the face of the record and may be proved at trial. *See In re Miramontes*, 648 S.W.3d 590, 601 (Tex. App.—El Paso 2022, no pet.) (citing *Chavez v. Chavez*, No. 01-13-00727-CV, 2014 Tex. App. LEXIS 11557, at *4 (Tex. App.—Houston [1st Dist.] Oct. 21, 2014, no pet.) (mem. op.)).

We review a trial court's ruling on a bill of review for an abuse of discretion, indulging every presumption in favor of the trial court's ruling. *See Woods v. Kenner*, 501 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Xiaodong Li v. DDX Grp. Inv., LLC*, 404 S.W.3d 58, 62 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Ordinarily, an order granting a bill of review is an interlocutory order and it is not considered to be a final appealable judgment unless it also disposes of all issues and claims. *See Kiefer v. Touris*, 197 S.W.3d 300, 302 (Tex. 2006) ("A bill of review which sets aside a prior judgment but does not dispose of all the issues of the case on the merits is interlocutory in nature and not a final judgment appealable to the court of appeals or the supreme court."); *Barnett Cycles, LLC v. Cornstubble*, No. 09-23-00216-CV, 2025 Tex. App. LEXIS 176, at **1-2 (Tex. App.—Beaumont Jan. 16, 2025, no pet. h.) (mem. op.) (dismissing an appeal from an order granting a bill of review because the order was interlocutory); *In re Est. of Carr*, No. 04-23-00287-CV, 2024 Tex. App. LEXIS 7827, at **7-9 (Tex. App.—San Antonio, Nov. 6, 2024, pet. filed) (mem. op.) (dismissing an appeal from an order granting a bill of review in probate proceedings for lack of jurisdiction because the order did not dispose of all issues and all parties and did not end a discrete phase of the

proceedings). That said, in this case, the trial court's Final Order includes the following language: "This judgment is (1) final, (2) a disposition of all claims and parties, and (3) appealable." We conclude that the trial court used unmistakable language of finality, and the otherwise unappealable Final Order granting the Bill of Review is appealable, and we therefore address whether the trial court erred in granting the bill of review. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203-04 (Tex. 2001) (When the order contains unmistakable language of finality, "an order can be final and appealable when it should not be[]" or even if it grants "more relief" than the movant is entitled to receive.).[5]

Analysis

We first address whether Gabriella, the party who filed the bill of review, proved that the trial court committed substantial error. *See Ablon*, 457 S.W.3d at 609; *Buck*, 291 S.W.3d at 53. In the previous proceeding, Rogelio testified that there were two children born of his marriage to Maria: Ana and Alejandro. However, in the bill of review proceeding, Ana testified that she was born of the relationship Ana had with Francisco Pinto. Her birth certificate was admitted into evidence, and it does not provide the name of her father. Ana testified that Rogelio is her step-father and that Rogelio did not adopt her. Ana's testimony about her true biological father

---

[5] Neither party challenges whether the trial court's order in the Bill of Review proceeding is a final appealable order.

13

was undisputed in the bill of review proceeding. Therefore, the evidence in the Bill of Review proceeding supports the trial court's finding #7:

> 7. Rogelio Estrada Rodriguez and/or the witnesses were questioned by this court as to whether Rogelio Estrada Rodriguez was the biological parent of Alejandro Rodriguez and Ana Maria McDow during the heirship proceeding to which there was an affirmative response.
> a. This information was not true.

We conclude that Gabriella met her burden to prove there was a substantial error in the previous heirship proceeding and Judgment Declaring Heirship, and we cannot say the trial court abused its discretion in granting the Bill of Review and setting aside the court's previous judgment in the heirship proceeding. *See Ablon*, 457 S.W.3d at 609; *Buck*, 291 S.W.3d at 53. We overrule Appellant's first issue.

Next, we address Appellant's third issue, wherein Appellant argues that the trial court erred by concluding that Ana had disclaimed her interest and she therefore was no longer Maria's heir. The Texas Estates Code defines "heir" as "a person who is entitled under the statutes of descent and distribution to a part of the estate of a decedent who dies intestate." Tex. Est. Code Ann. § 22.015. Under the Texas Property Code, where property passes because of an owner's death, a person may disclaim their interest in the property and such a disclaimer relates back to and takes effect at the time of the decedent's death. Tex. Prop. Code Ann. § 240.051(b)(1). "[I]f the disclaimant is an individual [and] the interest is passing because of the death of a decedent, the disclaimed interest passes as if the disclaimant had died

immediately before the time as of which the disclaimer takes effect[,]" and "[a] disclaimed interest that passes by intestacy passes as if the disclaimant died immediately before the decedent." *Id.* § 240.051(e)(2)(A), (f).

Ana testified in the previous heirship proceeding that she had filed a Disclaimer. A copy of her Disclaimer was admitted into evidence in the Bill of Review proceedings. Therefore, under section 240.051 of the Property Code, the effect of her Disclaimer was that her disclaimed interest passed as if she had died immediately before Maria. *See id.* Ana's disclaimer was effective at the time of Maria's death. *See id.* § 240.051(b)(1). Therefore, Ana was not an heir because she was not entitled to a distribution of Maria's estate. *See* Tex. Estates Code Ann. § 22.015. Ana's disclaimed interest passed as if she had died immediately before the time the disclaimer took effect—when Maria died. *See In re Est. of Wells*, No. 12-23-00066-CV, 2023 Tex. App. LEXIS 8475, at **20-21 (Tex. App.—Tyler Nov. 8, 2023, pet. denied) (mem. op.) (citing Tex. Prop. Code Ann. § 240.051(b), (e)). Ana's other three children—Austin, Brandon, and Lucas—disclaimed their interests in Maria's estate, so Ana's interest passed to Gabriella. We overrule Appellant's third issue.

Finally, we address Appellant's second issue, in which Appellant argues that Gabriella was not entitled to notice of the heirship proceedings. The record does not reflect that Appellant made this argument at the Bill of Review proceeding, which

15

is required to preserve error for appeal. *See* Tex. R. App. P. 33.1. Gabriella's testimony in the Bill of Review hearing that she did not receive notice of the heirship proceedings was uncontroverted. We overrule Appellant's second issue.

Neither party has raised any issue on appeal about the language in the trial court's Final Order that states it has reinstated the prior probate proceeding (trial cause number 21-41018-P) "on the court's active docket." That said, we may address jurisdictional matters sua sponte. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004).

Under section 55.251 of the Texas Estates Code, a statutory bill of review is available "to revise and correct an order or judgment[.]" Tex. Est. Code Ann. § 55.251(b). The bill of review is filed in the court in which the probate proceedings were held. Here, Gabriella filed her Petition for Bill of Review in the same probate court where the probate proceedings were held, and the bill of review petition was docketed under a new cause number.

If a trial court denies a bill of review, the order denying the bill of review becomes a final order for purposes of appeal. *Alaimo v. U.S. Bank Trust Nat'l Assoc.*, 551 S.W.3d 212, 215 (Tex. App.—Fort Worth 2017, no pet.) (citing *Baker v. Goldsmith*, 582 S.W.2d 404, 409 (Tex. 1979)). If the trial court grants the bill of review, a second step follows in the bill of review proceeding: adjudication of the original, underlying cause of action. *Id.* (citing *Hartford Underwriters Ins. v. Mills*,

16

110 S.W.3d 588, 590 (Tex. App.—Fort Worth 2003, no pet.)); *see also Baker*, 582

S.W.2d at 409. The second step should occur in the bill of review cause of action,

not the original action, because a judgment in a bill of review proceeding does not

restore a trial court's plenary power in the underlying cause. *Alwazzan v. Alwazzan*,

No. 01-11-00316-CV, 2024 Tex. App. LEXIS 4233, at *16 (Tex. App.—Houston

[1st Dist.] June 20, 2024, no pet.) (mem. op.).

> When a bill of review is granted, the underlying judgment is vacated but the parties proceed to final judgment in the bill of review proceeding on the merits of the underlying claims in the bill of review proceeding, not in the underlying case in which the judgment was vacated. The merits must be resolved in the bill of review case because the court's plenary power in the underlying case has expired and therefore, the trial court lacks subject-matter jurisdiction over that case.
> . . .
> [A] bill of review is a different procedural device—it is both filed and resolves the underlying dispute *in a separate lawsuit*. It does not, therefore, restore a court's plenary power over a cause of action that has been resolved by final judgment.

*Alaimo*, 551 S.W.3d at 216-17.

Here, the trial court's Final Order sets aside its ruling in cause number 21-

41018-P and then it purports to "reactivate" the probate case. However, the trial

court's plenary power in that case had expired. *See* Tex. R. Civ. P. 329b. Because

the original case was final and no longer appealable, every issue arising on the merits

should be disposed of in the suit on the petition for a bill of review. *See Kiefer*, 197

S.W.3d at 302.

17

Therefore, we affirm that portion of the trial court's Final Order vacating the prior Judgment Declaring Heirship in trial cause number 21-41018-P, we reverse that portion of the trial court's Final Order that states, "the probate matter is reinstated on this Court's active docket[,]" and we remand this matter to the trial court for a final determination of heirship to be conducted in the Bill of Review proceeding.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.


LEANNE JOHNSON
Justice

Submitted on September 25, 2024
Opinion Delivered March 6, 2025

Before Johnson, Wright and Chambers, JJ.